UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

THOMAS H. CLARK,                    )
                                    )
        Petitioner,                 )
                                    )    Case Nos. 4:02-cr-17 / 4:10-cv-39
v.                                  )
                                    )    Judge Edgar
UNITED STATES OF AMERICA,           )
                                    )
        Respondent.                 )


## MEMORANDUM AND ORDER

Federal prisoner Thomas H. Clark moves for post-conviction relief under 28 U.S.C. § 2255.

## I.      Standard of Review Under 28 U.S.C. § 2255

28 U.S.C. § 2255(a) provides that a federal prisoner may make a motion to vacate, set aside,

or correct a judgment of conviction or sentence on the ground that the sentence was imposed in

violation of the Constitution or laws of the United States, or that the federal district court lacked

jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by

federal law, or is otherwise subject to collateral attack.

As a threshold standard to relief a § 2255 motion must allege: (1) an error of constitutional

magnitude; (2) a sentence was imposed outside the federal statutory limits; or (3) an error of fact or

law that was so fundamental as to render the entire criminal proceeding invalid. *Short v. United

States*, 471 F.3d 686, 691 (6th Cir. 2006); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006);

*Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445,

454 (6th Cir. 2003); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

Clark bears the burden of establishing an error of federal constitutional magnitude which had

a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

A § 2255 motion is not a substitute for a direct appeal. Where nonconstitutional issues are at stake, there is no basis for allowing a collateral attack under 28 U.S.C. § 2255 to do service for a direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). To obtain relief under 28 U.S.C. § 2255 for a nonconstitutional error, e.g. an error in calculating the applicable sentencing range under the United States Sentencing Guidelines, Clark must establish either: (1) a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice; or (2) an error so egregious that it amounts to a violation of due process. *Reed*, 512 U.S. at 353-54; *Hill v. United States*, 368 U.S. 424, 428 (1962); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Watson*, 165 F.3d at 488; *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998); *Grant,* 72 F.3d at 505-06.

An evidentiary hearing is unnecessary if there are no genuine issues of material fact in dispute and the record conclusively shows that Clark is not entitled to relief under § 2255. An evidentiary hearing is not required where the allegations and claims cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *Amr v. United States*, 280 Fed. Appx. 480, 485 (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, (6th Cir. 2007); *Arredondo v. United States*, 178 F.3d 778, 782 (6th

Cir. 1999); *Brain v. United States*, 2011 WL 1343344, * 2 (E.D. Tenn. April 8, 2011); *Jones v. United States*, 2010 WL 1882122, * 1 (E.D. Tenn. May 11, 2010).

The burden is on Clark to articulate sufficient facts to state a viable claim for relief. Vague, conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant an evidentiary hearing. A § 2255 motion may be dismissed if it makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Brain*, 2011 WL 1343344, at * 2; *Jones*, 2010 WL 1882122, at * 2.

## II.    Facts and Procedural History

On September 24, 2001, during an undercover narcotics investigation, a police officer purchased 0.4 grams of cocaine base (crack) from Clark at a house in Shelbyville, Tennessee. On March 13, 2002, a federal grand jury initially indicted Clark on a charge of distributing crack cocaine and he was placed on pretrial diversion. Clark was unable to stay out of trouble and he continued to engage in drug trafficking activity while possessing a firearm.

On June 6, 2003, police informant Michael Wilson ("Wilson") made a controlled purchase of 6.9 grams of crack cocaine from Clark and Katherine Haston ("Haston") inside a mobile home or trailer rented by Reginald Brown ("Brown"). Wilson told the police that Clark and Haston regularly sold crack cocaine from the trailer but they did not actually live or reside there.

On June 9, 2003, police officers assigned to a drug task force obtained a valid search warrant for Brown's trailer. Upon executing the search warrant on June 12, 2003, the police officers found five persons inside the trailer's kitchen: Clark, Haston , Brown, Wilson, and Karen Anderson. When

the search warrant was executed on June 12, 2003, Wilson was not acting as a government agent or informant. Wilson was not present in Brown's trailer on June 12, 2003 under the direction or supervision of the police. Although Wilson had previously been an informant in cooperation with the police, Wilson had chosen to continue his own criminal drug trafficking activity.

Pursuant to the search warrant the officers seized from the kitchen table two digital weight scales commonly used for distributing drugs along with three bags of crack cocaine weighing 19.2 grams, 6 grams, and 1.1 grams, respectively. A loaded 9 mm semi-automatic handgun was found in a kitchen cabinet. It was later determined that Clark often possessed the handgun and that it was Clark who placed the handgun inside the kitchen cabinet. The police also found more than three grams of marijuana on Clark's person.

On May 11, 2004, a federal grand jury returned a second superseding indictment against Clark and co-defendants Haston, Brown, and Wilson. Count One of the superseding indictment charged Clark, Haston, Brown, and Wilson with conspiracy to violate 21 U.S.C. § 841(a)(1), that is, to distribute and possess with the intent to distribute five grams or more of cocaine base (crack), all in violation of 21 U.S.C. § 846. Count Two charged that Clark distributed cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1). Count Five charged that Clark and Haston, aided and abetted by each other, possessed with the intent to distribute five grams or more of cocaine base (crack) in violation of 21 U.S.C. §§ 2 and 841(a)(1).

Count Six charged that Clark and Haston, aided and abetted by each other, possessed a firearm, the loaded 9 mm semi-automatic handgun, in furtherance of the drug trafficking crimes charged in Counts One and Five in violation of 21 U.S.C. § 924(c). Count Seven charged that Clark, having previously been convicted of a felony, knowingly possessed in and affecting commerce a

firearm, the loaded 9 mm semi-automatic handgun, which had previously been transported in interstate commerce, in violation of 21 U.S.C. § 922(g). Count Ten charged that Clark possessed marijuana in violation of 21 U.S.C. § 844.

Clark pleaded not guilty. Clark's counsel made a motion to suppress the evidence seized by the police during the execution of the search warrant at Brown's trailer. This Court held a hearing and denied Clark's motion to suppress. Prior to trial the government filed a notice informing Clark that, if convicted, his sentence would be enhanced based on his prior felony drug conviction.

The case went to trial in April 2005. At trial, an agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives testified that the loaded 9 mm semi-automatic handgun found inside Brown's trailer had been manufactured in California. This established that the handgun had traveled in interstate commerce from California to Tennessee. Clark stipulated that he had a prior felony conviction and he was ineligible to lawfully possess a firearm.

Brown testified that Clark primarily functioned as Haston's bodyguard and Clark usually carried or possessed a firearm. Brown further testified that during the police execution of the search warrant at his trailer on June 12, 2003, Brown observed Clark take the 9 mm semi-automatic handgun from Clark's waistband and hide it in the kitchen cabinet. Brown testified that he had previously observed Clark carrying the same handgun on other occasions.

Karen Anderson testified that she had repeatedly obtained crack cocaine from Brown's trailer. Anderson usually dealt with Haston, but Anderson also occasionally purchased drugs from Clark. Anderson considered Clark to be Haston's bodyguard. Anderson testified that she saw Clark with a 9 mm handgun on several occasions. Anderson further testified that on June 12, 2003, shortly before the police executed the search warrant, Clark brought the handgun and bags of cocaine into

Brown's trailer.

The prosecution also called Todd Russell ("Russell") as a witness. Russell testified that he repeatedly purchased crack cocaine from Brown's trailer during the spring of 2003. Russell purchased drugs from Clark on one or two occasions, and from Haston more than ten times. Russell testified that Clark seemed to be acting as Haston's bodyguard or enforcer. Russell recalled going to Brown's trailer one night to buy crack cocaine and encountering Clark pointing a gun at Russell when the door was opened. Russell further testified that on a different occasion, when Clark and Haston were delivering cocaine to Wilson, Russell saw Clark carrying the handgun in the waistband of Clark's pants.

Clark did not testify at trial and did not present any evidence. On April 18, 2005, the jury returned a verdict finding Clark guilty as charged on Counts One, Two, Five, Six, Seven, and Ten.

In calculating the applicable sentencing range under the Sentencing Guidelines, the probation officer determined that Clark was responsible for 171 grams of cocaine base (crack) for a base offense level of 34. Because Clark had at least two prior felony convictions for violent felonies or offenses involving controlled substances, he was classified under U.S.S.G. § 4B1.1 as a career offender which enhanced his offense level to 37. Clark had previously been convicted in Rutherford County, Tennessee for possession of cocaine with intent to distribute, reckless endangerment by dangerous weapon, and reckless endangerment by motor vehicle in violation of Tennessee law.

Clark had 12 criminal history points which yielded an initial criminal history category V. Given his classification as a career offender under U.S.S.G. § 4B1.1, his criminal history category was enhanced to VI. The guideline sentencing range was 360 months to life imprisonment, to be followed by a mandatory consecutive term of an additional 60 months imprisonment for violating

21 U.S.C. § 924(c). Clark also faced a statutory mandatory minimum of 10 years imprisonment on Count One and a statutory mandatory minimum of 15 days imprisonment on Count Ten.

During the sentencing hearing on September 19, 2005, Clark and his counsel agreed and did not dispute that Clark was correctly classified as a career offender. This Court determined, without any objection from Clark, that his applicable Guidelines range, including the mandatory consecutive term of 60 months for violating 21 U.S.C. § 924(c), was a total of 420 months to life.

On September 19, 2005, this Court sentenced Clark to be imprisoned for a total term of 420 months. This term of imprisonment consists of 360 months on Counts One, Two and Five, 120 months on Count Seven, and 24 months on Count Ten, to be served concurrently. Clark was sentenced to be imprisoned for 60 months on Count Six for violating 21 U.S.C. § 924(c), to be served consecutively to all other counts. The Court further ordered 8 years of supervised release. The judgment of conviction was entered on October 3, 2005.

Clark took a direct appeal from the judgment of conviction and sentence to the Sixth Circuit Court of Appeals. On appeal, Clark raised the following issues. Clark argued that: (1) the district court erred in denying his motion to suppress the evidence seized pursuant to the search warrant; (2) the district court abused its discretion in disallowing a change of defense counsel; (3) the government engaged in prosecutorial misconduct by implying in closing argument that Clark needed to testify; (4) the sentence was procedurally unreasonable; and (5) the district court erred in enhancing the applicable Guidelines sentencing range based on Clark's prior convictions.

On June 15, 2009, the Sixth Circuit rendered its opinion affirming the judgment of conviction and sentence, and dismissing Clark's appeal. *United States v. Clark*, 328 Fed. Appx. 992 (6th Cir. 2009), *cert. denied*, 130 S.Ct. 435, 175 L.Ed.2d 297 (U.S. Oct. 13, 2009).

In his present motion under 28 U.S.C. § 2255, Clark raises the following claims.

### III.  *Almany* Claim

Relying on *United States v. Almany*, 598 F.3d 238 (6th Cir. 2010), Clark claims that the District Court erred in imposing the consecutive sentence of 60 months imprisonment on his conviction under Count Six for violating 21 U.S.C. § 924(c).  Clark seeks to have the consecutive sentence of 60 months on Count Six vacated.

This claim is without merit and must be denied.  Clark cannot obtain any relief based on *Almany,* 598 F.3d 238.  The Sixth Circuit's decision in *Almany*, 598 F.3d 238, was abrogated and vacated by the Supreme Court in *Abbott v. United States*, 131 S.Ct. 18, 178 L.Ed.2d 348 (2010).  *Almany*, 598 F.3d 238, is no longer good law.  *See United States v. Almany*, 626 F.3d 901 (6th Cir. 2010).  In the wake of *Abbott*, the law is now crystal clear that 21 U.S.C. § 924(c) mandates a consecutive sentence of 60 months, regardless of whether Clark is subject to a greater mandatory minimum sentence for the underlying drug trafficking offense.  *United States v. Thomas*, 450 Fed. Appx. 530 (6th Cir. 2011); *United States v. Ransom*, 436 Fed. Appx. 605, 606-07 (6th Cir. 2011); *United States v. Campbell*, 436 Fed. Appx. 518, 532-33 (6th Cir. 2011); *United States v. Adkins*, 429 Fed. Appx. 471, 474-75 (6th Cir. 2011); *United States v. Ham*, 628 F.3d 801, 811-13 (6th Cir. 2011); *Douglas v. United States*, 2012 WL 1090598, * 1 (E.D. Tenn. March 30, 2012).

### IV.  Sixth Amendment Claims of Ineffective Assistance of Counsel

#### A.  Standard of Review:  *Strickland* Test

Clark makes several claims that he was deprived of his right to the effective assistance of counsel at trial and on direct appeal in violation of the Sixth Amendment to the United States Constitution.  The Sixth Amendment provides that in all criminal prosecutions, the accused shall

have the to right to assistance of counsel for his defense. Ineffective assistance of counsel that violates the Sixth Amendment occurs when an attorney's deficient performance causes actual prejudice to the criminal defendant. *Lockhart v. Fretwell*, 506 U.S. 356, 369 (1993); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004).

*Strickland* establishes a two-part test for deciding Sixth Amendment claims of ineffective counsel. First, Clark must show that his attorney's performance was deficient. Second, Clark is required to demonstrate that his counsel's deficient performance caused him actual prejudice. *Strickland*, 466 U.S. at 687; *Sowell*, 372 F.3d at 836-37; *Griffin*, 330 F.3d at 736; *Smith v. Mitchell,* 348 F.3d 177, 199 (6th Cir. 2003); *Mason v. Mitchell,* 320 F.3d 604, 616 (6th Cir. 2003); *Wickline v. Mitchell,* 319 F.3d 813, 819 (6th Cir. 2003); *Skaggs v. Parker*, 235 F.3d 261, 266-67 (6th Cir. 2000).

The first prong of the *Strickland* test requires Clark to show that his attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *Sowell*, 372 F.3d at 836; *Wickline,* 319 F.3d at 819; *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000); *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996); *Green v. United States*, 65 F.3d 546, 551 (6th Cir. 1995). The Court's scrutiny of the reasonableness of defense counsel's performance is highly deferential. Counsel is strongly presumed to have rendered adequate legal assistance and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland*, 466 U.S. at 689-90 (strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance); *Sowell*, 372 F.3d at 837; *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Mason,* 320 F.3d at 616-17; *Wickline,* 319 F.3d at 819; *Skaggs*, 235 F.3d at 268; *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997); *West v. Seabold*,

73 F.3d 81, 84 (6th Cir. 1996); *O'Hara v. Wigginton*, 24 F.3d 823, 838 (6th Cir. 1994).

Strategic choices made by an attorney after thorough investigation of the relevant facts and law are virtually unchallengeable. Strategic choices made by counsel after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation or restriction placed on the investigation. Defense counsel has a duty to either make a reasonable investigation under the circumstances or make a reasonable decision that a particular investigation is unnecessary. *Strickland*, 466 U.S. at 690-91; *Skaggs*, 235 F.3d at 268.

The second prong of the *Strickland* test requires Clark to show that his attorney's deficient performance caused actual prejudice to his case. *O'Hara*, 24 F.3d at 828; *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993). The prejudice component focuses on the question whether counsel's deficient performance renders the result of the criminal proceeding unreliable or fundamentally unfair. *Lockhart*, 506 U.S. at 372; *Skaggs*, 235 F.3d at 270. The Court must determine whether the performance of counsel was so manifestly deficient that defeat was snatched from the hands of probable victory. *Thelen v. United States,* 131 Fed. Appx. 61, 63 (6th Cir. 2005); *West*, 73 F.3d at 84; *Lewis*, 11 F.3d at 1352; *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc).

To satisfy the prejudice element, Clark must show there is a reasonable probability that, but for the errors and deficient performance of counsel, the result in this case would have been different and more favorable to him. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the criminal proceeding. *Strickland*, 466 U.S. at 693-94; *Humphress*, 398 F.3d at 859; *Campbell*, 364 F.3d at 730; *Griffin*, 330 F.3d at 736; *Mason,* 320 F.3d at 617; *Wickline,* 319 F.3d at 819; *Skaggs*, 235 F.3d at 270-71; *Carter*, 218 F.3d at 591. "The benchmark

for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Court need not address both components of the *Strickland* test if Clark makes an insufficient showing on one. If it is easier to dispose of the ineffective counsel claim solely on the ground of lack of sufficient prejudice, this Court may follow that course. *Strickland*, 466 U.S. at 697; *Campbell*, 364 F.3d at 730.

## B. <u>Speedy Trial Act</u>

Clark claims that his counsel was ineffective for not making a motion to dismiss the second superseding indictment based on a violation of the Speedy Trial Act, 18 U.S.C. §§ 3161 - 3174. In analyzing this claim in the context of a motion seeking relief under 28 U.S.C. § 2255, this Court is guided by the Sixth Circuit's decision in *Campbell*, 364 F.3d at 731 which is directly on point.

This Court concludes that Clark's claim must be denied because he has not met his burden of showing either prong of the *Strickland* test. Clark fails to show that his counsel's performance was not objectively reasonable and caused actual prejudice to his case. There is no prejudice because Clark fails to show there is a reasonable probability that, but for his attorney's failure to make a motion to dismiss the indictment, the ultimate result or outcome would have been different and more favorable to Clark.

The Speedy Trial Act requires that a criminal defendant be brought to trial within 70 days after the filing of an indictment or an arraignment, whichever is later. 18 U.S.C. § 3161(c)(1). It allows for certain delays to be excluded from the running of the speedy trial clock. If a defendant is not brought to trial within 70 days, taking into account excludable time periods, the Court is

obligated to dismiss the indictment on the defendant's motion. Dismissal of an indictment may be with or without prejudice. 18 U.S.C. § 3162(a)(2); *Campbell*, 364 F.3d at 731.

In its brief, the United States correctly calculates the application of the Speedy Trial Act to Clark's case. [Court Doc. No. 226, pp. 9-13]. The federal grand jury returned the first indictment against Clark on March 13, 2002 but the speedy trial clock did not start to run until Clark's arraignment on March 26, 2002. His trial commenced on April 12, 2005. There were a total of 1,113 days between Clark's arraignment on March 26, 2002, and the commencement of his trial on April 12, 2005 on the second superseding indictment. The Court agrees with the respondent's calculation that at least 1,036 of those days constitute excludable time under the Speedy Trial Act. No more than 77 non-excludable days elapsed. Assuming that there was a violation of the Speedy Trial Act, the 70-day limit expired no more than 7 days prior to Clark's trial.

In determining whether to dismiss an indictment with or without prejudice, the Court pursuant to 18 U.S.C. § 3162(a)(2) considers: (1) the seriousness of the offenses; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a reprosecution on the administration of justice. *Campbell*, 364 F.3d at 731. In Clark's case, all three of these factors would have weighed heavily in favor of dismissing the second superseding indictment against Clark without prejudice based on a relatively minor violation of the Speedy Trial Act by only seven days.

Clark's ineffective counsel claim must be denied because Clark cannot show that his counsel's performance was objectively unreasonable and caused actual prejudice to his case. It was reasonable for Clark's counsel not to make a motion to dismiss the indictment. If Clark's counsel had moved to dismiss the indictment based on a violation of the Speedy Trial Act and if that motion were granted, dismissal of the indictment would have been without prejudice. The federal grand

jury could have immediately returned a new indictment against Clark charging him with all of the same criminal offenses and the prosecution of Clark would have simply started all over again. This would not have ultimately yielded any benefit to Clark. Clark cannot show there is a reasonable probability that he could have achieved a better or more favorable outcome if his counsel had been able to get the indictment dismissed without prejudice.

Under these circumstances, Clark's Sixth Amendment claim of ineffective assistance of counsel fails. Clark cannot show that he suffered actual prejudice as a result of his counsel's failure to make a motion to dismiss the indictment based on a violation of the Speedy Trial Act. *Campbell*, 364 F.3d at 730-31; *see also United States v. Rushin,* 642 F.3d 1299 (10th Cir. 2011); *Chambliss v. United States,* 384 Fed. Appx. 897, 899 (11th Cir. 2005); *United States v. Fowers,* 131 Fed. Appx. 5, 6-7 (3rd Cir. 2005).

### C.    Mental Capacity and Insanity Defense

Next, Clark claims that his trial counsel was ineffective for not investigating and utilizing his history of mental problems thereby depriving Clark of an affirmative defense. Clark contends that due to his limited mental capacity, he was incapable of knowingly and intentionally entering into the drug trafficking conspiracy charged in Count One under 21 U.S.C. § 846. It is argued that to obtain a conviction, the government is required to prove there was an agreement by the members of conspiracy to violate 21 U.S.C. § 841(a)(1) (agreement to distribute or possess with the intent to distribute five grams or more of crack cocaine), and also prove that Clark knowingly joined that agreement. Clark takes the position that the agreement is void if any of the parties (conspirators) lacked the mental capacity necessary to knowingly enter into the agreement.

Clark contends that his trial counsel knew he had been diagnosed with mental problems but

counsel failed to conduct any investigation whether Clark was mentally competent to knowingly and intentionally enter into the drug trafficking conspiracy. Clark says that although he was twice ordered by this Court to undergo mental evaluations, they were conducted solely to determine whether Clark was mentally competent to stand trial and not to determine whether he was mentally competent/insane when the offense was committed, i.e. had the mental capacity to knowingly enter into the agreement that forms the drug trafficking conspiracy in Count One. Clark asserts the pretrial mental evaluation revealed that he suffered from: (1) attention deficit hyperactivity disorder; (2) oppositional defiance disorder; (3) conduct disorder; (4) polysubstance dependence; (5) psycho-social stressors; and (6) mild mental retardation.

Clark further says that co-conspirator Katherine Haston was similarly ordered to undergo a mental evaluation. It is argued that any reasonable, competent defense attorney would have investigated to determine whether Clark was mentally capable of forming a valid agreement to be a member of the drug-trafficking conspiracy, especially where "two apparent mentally retarded persons," Clark and Haston, were charged with entering into the agreement. Thus, Clark floats the theory that there could not have been a valid agreement underlying the conspiracy because Clark and Haston were either mentally retarded or otherwise lacked sufficient mental capacity to knowingly enter into the agreement and become members of the drug-trafficking conspiracy. In sum, Clark claims that his counsel failed to investigate his mental illness and lack of mental competency at the time the drug-trafficking conspiracy occurred, and counsel failed to present a "viable insanity defense by expert witnesses."

Clark submits a copy of his forensic mental evaluation report dated October 22, 2004, which was prepared at the Federal Correctional Institution in Butner, North Carolina. The report is

appended as an exhibit to Clark's reply brief. [Court Doc. No. 228]. In his reply brief, Clark contends that he was diagnosed as having antisocial personality disorder which involves traits such as disregarding the rights and feelings of other persons, and being frequently deceitful and manipulative in order to gain personal profit or pleasure. Clark asserts that he has a long history of impulsive criminal behavior beginning at the age of nine. He says that individuals with antisocial personality disorder tend to be impulsive, and make decisions on the spur of the moment without thinking and without consideration for the consequences to themselves or others.

After reviewing the record, this Court concludes that this ineffective counsel claim must be denied as frivolous. Clark has not met his burden of showing either prong of the *Strickland* test. Clark fails to show that his counsel's performance was objectively unreasonable and caused actual prejudice to his case. Clark fails to show there is a reasonable probability that, but for the alleged errors and deficient performance of his trial counsel, the result in this case would have been different and more favorable to Clark.

Clark improperly presumes that he and Haston are "mentally retarded" when there is no evidence to support this assertion. The mere fact that Clark and Haston received pretrial psychological or mental evaluations does not establish that they are mentally retarded, mentally incompetent, or insane. Clark and Haston were never found to be mentally retarded, mentally incompetent, or insane after being examined and tested.

There was no basis in fact or law for Clark's attorney to present an insanity defense at trial. Clark is mistaken when he alleges that his counsel failed to investigate the issue of mental competency and a possible insanity defense. Clark's attorney made a motion requesting that the pretrial mental evaluation encompass both Clark's mental competence to stand trial and his sanity

at the time the offenses charged in the indictment were committed. [Court Doc. No. 76]. Despite Clark's lack of cooperation and his refusal to participate in any form of psychological testing during that mental evaluation, the examiner was able to determine that Clark was not suffering from a severe mental disease or defect at the time the crimes were committed. [Court Doc. No. 119]. The examiner noted Clark's own description of his conduct was indicative of an individual who was capable of rational, goal-directed, problem-solving behavior. The examiner also noted that Clark understood that his behavior was wrong as demonstrated by his concealing or hiding the handgun in a kitchen cabinet in Brown's trailer that was searched by the police, and Clark's "feeling of trepidation" prior to his accompanying Haston to the residence where the drug trafficking occurred.

The record establishes that defense counsel reviewed and investigated the issue of Clark's sanity or mental capacity when the offenses were committed. Clark's counsel correctly concluded that there was no plausible factual or legal basis for presenting a defense of insanity or lack of mental capacity to form the requisite intent to commit the criminal offenses. There were no facts and evidence available to support any such defense on behalf of Clark.

### D.    Jury Instruction: No Conspiracy With Government Agent or Informant

Michael Wilson, who at one point served as a police informant, was charged in Count One of the indictment as a co-conspirator. Clark claims that his counsel was ineffective for failing to request a jury instruction that there cannot be a conspiracy between Clark and Wilson because Wilson was acting as a government agent or police informant.

This claim fails. The Court concludes that this claim must be denied because Clark has not met his burden of showing either prong of the *Strickland* test. Clark fails to show that his counsel's performance was not objectively reasonable and caused actual prejudice to his case. Clark fails to

show there is a reasonable probability that, but for the alleged deficient performance of his counsel, the result would have been different and more favorable to Clark. Any such request for a jury instruction by Clark would have been futile. Counsel cannot be deemed ineffective for not raising arguments which have no merit. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999); *Brain v. United States*, 2011 WL 1343344, * 11 (E.D. Tenn. April 8, 2011).

To prevail on a charge of conspiracy, the government must prove that there was an agreement between two or more persons. *United States v. Hines,* 398 F.3d 713, 718 (6th Cir. 2005). Proof of an agreement between a single defendant and a person who is acting as a government agent or informant is insufficient to support a conspiracy conviction. A person who is acting as a government agent or informant cannot be a conspirator. *United States v. Hayden,* 68 Fed. Appx. 530, 532 (6th Cir. 2003); *United States v. Williams,* 274 F.3d 1079, 1084 (6th Cir. 2001); *United States v. Pennell*, 737 F.2d 521, 536 (6th Cir. 1984). The rule that a government agent or informant does not count as a conspirator is limited to situations in which the conspiracy involves only one defendant and a government agent or informant. *Hayden,* 68 Fed. Appx. at 532; *see also United States v. Deitz,* 577 F.3d 672, 681 (6th Cir. 2009).

This rule is not applicable to the fact situation in Clark's case. Prior to June 12, 2003, Wilson had occasionally been a police informant. However, Wilson was not acting as a government agent or police informant on June 12, 2003 when the police executed the search warrant at Brown's trailer. When Wilson was found inside the trailer on June 12, 2003 along with Clark, Wilson was not acting at the direction or under the control of the police officers. Instead, Wilson had chosen to continue his own criminal drug trafficking activity on June 12, 2003.

Because Wilson was not acting as a government agent or police informant on June 12, 2003,

Wilson was properly named in Count One of the indictment as a co-conspirator. Wilson pleaded guilty to the drug-trafficking conspiracy charged in Count One. Wilson stipulated in his plea agreement that he was a member of the conspiracy with Clark, Haston, and Brown to distribute crack cocaine. At Clarks' trial, the jury could find that Clark had conspired with Wilson. Moreover, the evidence also established that Clark conspired with persons other than Wilson. The evidence presented at trial proved that Clark conspired with co-defendants Haston and Brown.

Accordingly, there was no basis in fact or law for this Court to give the jury instruction that Clark now faults his counsel for failing to request. If Clark's counsel had made a request for such a jury instruction at trial, the request would have been denied by the Court.

### E.    Michael Wilson's Affidavit

Clark submits a photocopy of a handwritten affidavit signed by Michael Wilson before a notary public on January 22, 2004. This will be referred to as "Wilson's affidavit." In the affidavit Wilson states in pertinent part:

> The Drug Task Force Blackmailed me and made me believe that if I went to work for them that all, charges against me would be dismissed. So I thought it was in my best interest to assist them in making several buys for drugs throughout Shelbyville, Tennessee. The Drug Task Force for Shelbyville [illegible, coerced ?] me into saying things that wasn't true, for instance, on June 6th 2003, Clark pulled out an ounce of drugs out of his pocket (cocaine) and me giving confidential funds for Haston's. I have not been threatened by no means, I'm writing this because, I know that the things for the Task Force were wrong, So I want the court to know and Clark's lawyer and also Haston's lawyer to know that I will not testify against them in court. By know means because I will not be able to tell the truth, because these cases I'm on done the 5th 2003 and June 6th 2003 are build upon lies (False Testimony).

[Court Doc. No. 213-1].

Clark claims that his counsel was ineffective for failing to investigate and interview Wilson

18

as an exculpatory witness, failing to call Wilson to testify at trial, and failing to seek dismissal of the indictment against Clark based on alleged government misconduct. Clark submits his declaration made under penalty of perjury pursuant to 28 U.S.C. § 1746. [Court Doc. No. 214]. Clark states that he presented Wilson's affidavit to his counsel during a pretrial conference.[1] After reviewing Wilson's affidavit, counsel agreed that Wilson's allegations were a serious matter and counsel planed to bring Wilson's affidavit to this Court's attention. Clark asserts that his counsel promised to investigate and interview Wilson to determine whether Wilson should be called to testify as a defense witness at Clark's trial. When his case went to trial, Clark realized that his counsel had not interviewed Wilson. Clark alleges that during the trial, he pleaded with his counsel to bring the allegations in Wilson's affidavit to the Court's attention but counsel refused.

This ineffective counsel claim must the denied because Clark has not met his burden of showing either prong of the *Strickland* test. Clark fails to show that his counsel's performance was not objectively reasonable and caused actual prejudice to his case. Clark fails to show there is a reasonable probability that, but for the alleged deficient performance of his counsel, the outcome of the trial would have been different and more favorable to him.

It was objectively reasonable for Clark's counsel not to rely on Wilson's affidavit and not to call Wilson to testify at Clark's trial. Approximately seven months after Wilson prepared his affidavit dated January 22, 2004, and prior to Clark's trial, Wilson pleaded guilty to Count One of the indictment pursuant to a plea agreement. Wilson admitted under oath that he conspired with Clark, Haston, and Brown to distribute crack cocaine as charged in Count One. Thus, Wilson's affidavit dated January 22, 2004, was subsequently contradicted by Wilson's statements made in

---

[1] The Court infers that Clark persuaded Wilson to execute the affidavit.

open court under oath in support of his guilty plea on Count One.

When Clark's case went to trial after Wilson's guilty plea, it was objectively reasonable for Clark's counsel not to use or give any credence to Wilson's affidavit since Wilson had clearly demonstrated that he was an unreliable witness. If Clark's counsel had called Wilson to testify as a defense witness at Clark's trial, any testimony by Wilson that might have been favorable to Clark – testimony consistent with Wilson's January 22, 2004 affidavit – would have easily been impeached by the prosecution on cross-examination of Wilson.

Based on Wilson's discredited affidavit, Clark further claims that his right to due process under the Fifth Amendment to the United States Constitution was violated because Wilson "suggests" that unidentified law enforcement officers (members of the Drug Task Force) maliciously engaged in outrageous government conduct by falsifying police reports and committing perjury for the purpose of involving Clark in the drug-trafficking investigation which resulted in Clark's federal indictment. This Fifth Amendment due process claim fails. Wilson's affidavit has little or no probative value. In light of his guilty plea and conviction, Wilson is not a credible witness. Moreover, separate and apart from Wilson's temporary involvement in this case as a police informant, the United States presented more than sufficient other evidence at Clark's trial to prove beyond a reasonable doubt that Clark was guilty as charged in the second superseding indictment. The evidence in the record conclusively shows that Clark is guilty and refutes the self-serving affidavit that Clark obtained from Wilson on January 22, 2004. Accordingly, this Court rejects Clark's due process claim of outrageous police conduct predicated on Wilson's affidavit.

### F. Classification as Career-Offender Under U.S.S.G. § 4B1.1

Clark claims that his counsel was ineffective for not challenging on direct appeal Clark's

career-offender classification under U.S.S.G. § 4B1.1 in light of *Begay v. United States*, 553 U.S. 137 (2008) and *United States v. Baker,* 559 F.3d 443 (6th Cir. 2009).  In the wake of *Begay* and *Baker*, Clark argues that his classification under U.S.S.G. § 4B1.1 as a career offender was a sentencing error or mistake and he seeks to be resentenced.

Respondent United States argues that, to the extent Clark contends the Court erred by sentencing him as a career offender under U.S.S.G. § 4B1.1, this claim of a sentencing error in violation of the United States Sentencing Guidelines is not cognizable under 28 U.S.C. § 2255 since it does not involve jurisdictional or constitutional concerns.  *Timmreck*, 441 U.S. at  784 (a claim of error that is neither jurisdictional nor constitutional is not cognizable under 28 U.S.C. § 2255 unless it involves a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure).

Respondent argues that Clark's classification as a career offender under U.S.S.G. § 4B1.1 which impacted the calculation of his Guidelines sentencing range has no effect on the applicable statutory minimum or maximum for his crime, unlike the Armed Career Criminal statute, 18 U.S.C. § 924(e)(1), which was at issue in *Begay*.  It is argued by the respondent that the sentence of 420 months imprisonment imposed on Clark is lawful and proper since it does not exceed his statutory maximum of life imprisonment.  If Clark were to be resentenced today, this Court could reimpose the same sentence, even if we assume *arguendo* that Clark is not a career offender under U.S.S.G. § 4B1.1.  Thus, respondent contends that Clark does not have a viable claim cognizable under 28 U.S.C. § 2255 because he has not shown there is a fundamental defect which inherently results in a complete miscarriage of justice.

The respondent's argument has some merit but it does not carry the day.  A mere claim of

a sentencing error in violation of the Sentencing Guidelines does not, by itself, constitute a violation of the United States Constitution. Where nonconstitutional issues are at stake, there is no basis for allowing a collateral attack under 28 U.S.C. § 2255 to do service for a direct appeal. It is well settled that a § 2255 motion is not a substitute for a direct appeal and it cannot do service for a direct appeal. *Bousley*, 523 U.S. at 621; *Frady*, 456 U.S. at 167-68; *Timmreck*, 441 U.S. at 784; *Regalado*, 334 F.3d at 528; *Grant,* 72 F.3d at 506.

To obtain relief under § 2255 for a nonconstitutional error, i.e. error in calculating the applicable range under the Sentencing Guidelines based on the career-offender classification in U.S.S.G. § 4B1.1, Clark must establish either: (1) a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice; or (2) an error so egregious that it amounts to a violation of due process. *Reed*, 512 U.S. at 353-54; *Hill*, 368 U.S. at 428; *Jones*, 178 F.3d at 796; *Watson*, 165 F.3d at 488; *Fair*, 157 F.3d at 430; *Grant,* 72 F.3d at 505-06.

Because Clark did not raise this particular claim of sentencing error on his direct appeal to the Sixth Circuit Court of Appeals, it is deemed to be waived. Generally, such sentencing challenges must be made on direct appeal or they are waived and cannot be raised for the first time in a motion under 28 U.S.C. § 2255. *Weinberger*, 268 F.3d at 351; *Jones*, 178 F.3d at 796; *Grant,* 72 F.3d at 505-06. Claims of sentencing error based on alleged mistakes in the application of the Sentencing Guidelines rarely, if ever, warrant post-conviction relief from the consequences of the waiver under § 2255. *Grant,* 72 F.3d at 506.

However, Clark claims ineffective assistance of counsel on his appeal in violation of the Sixth Amendment which adds another layer to the analysis. Relief from the waiver may be available to Clark under 28 U.S.C. § 2255 if he can demonstrate that he was deprived of his Sixth Amendment

right to the effective assistance of counsel. A claim of Guidelines sentencing error can be reviewed for the first time under § 2255 if the claim was waived by the lack of a direct appeal as a result of ineffective counsel. *Weinberger*, 268 F.3d at 351; *Grant*, 72 F.3d at 506; *Taylor v. United States*, 2012 WL 669521, * 15 (E.D. Tenn. Feb. 28, 2012); *Sims v. United States*, 2012 WL 424956, * 9 (E.D. Tenn. Feb. 9, 2012); *Coleman v. United States*, 2009 WL 1393323, * 9 (E.D. Tenn. May 18, 2009).

This Court concludes that Clark has a viable Sixth Amendment claim of ineffective counsel. Clark has met his burden of establishing both prongs of the *Strickland* test. Clark has shown that the performance of his counsel on appeal was not objectively reasonable and it caused prejudice to Clark's case. In light of *Baker,* 559 F.3d 443, there is a reasonable probability that, but for his counsel's deficient performance on the direct appeal to the Sixth Circuit, the result of the criminal proceeding would have been different and more favorable to Clark concerning his sentence of imprisonment. Therefore, Clark's waiver of his claim of sentencing error is excused and overcome by the ineffective assistance of counsel. *Weinberger*, 268 F.3d at 352. Clark states a viable claim for post-conviction relief that is cognizable under 28 U.S.C. § 2255.

U.S.S.G. § 4B1.1(a) provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of con-viction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The term "crime of violence" is defined in U.S.S.G. § 4B1.2(a). During the sentencing phase of Clark's case, this Court calculated his applicable Guidelines sentencing range as follows. Clark was deemed responsible for a total of 171 grams of cocaine base (crack) for a base offense level of

34.  Clark had prior felony convictions under Tennessee law for possession of cocaine with intent to distribute, reckless endangerment by dangerous weapon, and reckless endangerment by motor vehicle.  Based on these prior felony convictions, this Court classified Clark as a career offender under U.S.S.G. § 4B1.1 which enhanced his offense level to 37.  During the sentencing hearing on September 19, 2005, Clark and his counsel did not dispute that Clark was correctly classified as a career offender.

Clark had 12 criminal history points which yielded an initial criminal history category V. Given his classification as a career offender under U.S.S.G. § 4B1.1, his criminal history category was enhanced to VI.  The Guidelines sentencing range was 360 months to life imprisonment, to be followed by a mandatory consecutive term of an additional 60 months imprisonment for violating 21 U.S.C. § 924(c).  Clark also faced a statutory mandatory minimum of 10 years imprisonment on Count One and a statutory mandatory minimum of 15 days imprisonment on Count Ten.

On September 19, 2005, this Court sentenced Clark to be imprisoned for a total term of 420 months.  This term of imprisonment consists of 360 months on Counts One, Two and Five, 120 months on Count Seven, and 24 months on Count Ten, to be served concurrently.  Clark was further sentenced to be imprisoned for an 60 months on Count Six for violating 21 U.S.C. § 924(c), to be served consecutively to all other counts.

Clark's counsel filed the initial appellate brief in the Sixth Circuit on January 15, 2008. Three months later on April 16, 2008, the Supreme Court rendered its opinion in *Begay v. United States*, 553 U.S. 137 (2008).  In *Begay*, the Supreme Court held that a conviction under New Mexico state law for the felony offense of driving a motor vehicle under the influence of alcohol is not a "violent felony" within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1),

which imposes a special mandatory 15-year term of imprisonment upon felons who unlawfully possess a firearm and have three or more prior convictions for violent felonies. The Supreme Court said that in order for a prior felony conviction to qualify as a "violent felony" under the Armed Career Criminal Act, it must be similar both in kind and in degree to the specific examples set forth in 18 U.S.C. § 924(e)(2)(B). *Begay*, 553 U.S. at 143-45.

Clark now claims that his appellate counsel was ineffective for not anticipating or predicting that *Begay* would also be extended and applied to career-offender classifications under U.S.S.G. § 4B1.1 as it was by the Sixth Circuit in *Baker,* 559 F.3d 443. Clark's counsel did not file a supplemental brief in the Sixth Circuit seeking to apply *Begay* to Clark's case. Clark's counsel did not raise any issue or argument on appeal in the Sixth Circuit challenging Clark's classification as a career offender under U.S.S.G. § 4B1.1 based on *Begay*.

After Clark's appeal had been fully briefed and submitted to a Sixth Circuit panel for a decision, the Sixth Circuit on March 16, 2009 rendered its opinion in *Baker,* 559 F.3d 443. In *Baker*, the Sixth Circuit relied on its prior unpublished opinion in *United States v. Johnson*, 308 Fed. Appx. 968, 2009 WL 224036 (6th Cir. Jan. 30, 2009), and *Begay.* Consistent with *Johnson*, the Sixth Circuit in *Baker* decided there was insufficient evidence for the district court to make a determination that a prior Tennessee felony conviction for reckless endangerment on its face qualified as a "crime of violence" for purposes of classifying the defendant as a career offender under U.S.S.G. § 4B1.1. The Sixth Circuit reasoned that, in light of *Begay*, it was plain error for the district court to classify the defendant as a career offender under U.S.S.G. § 4B1.1 because the Tennessee reckless endangerment statute on its face did not constitute a "crime of violence."

The Sixth Circuit reversed and vacated defendant Baker's sentence of imprisonment. It

remanded the case to the district court for the limited purpose of resentencing after the district court made a determination whether the prior Tennessee felony conviction for reckless endangerment was a "crime of violence" and whether the defendant should be classified as a career offender under U.S.S.G. § 4B1.1. *Baker,* 559 F.3d at 455.

The government argued that, if defendant Baker during the sentencing hearing had objected to the district court's conclusion that the Tennessee reckless endangerment conviction constituted a predicate felony under U.S.S.G. § 4B1.1, the government could have presented additional evidence to establish that it did qualify as a "crime of violence." The Sixth Circuit in *Baker* decided that the district court on remand could hold a hearing and consider any additional factual evidence concerning the prior Tennessee felony conviction for reckless endangerment, provided that the new evidence was limited to the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented. On remand, the government would also be allowed to offer new evidence of any other separate, prior predicate felony convictions under U.S.S.G. § 4B1.1. *Baker,* 559 F.3d at 455.

While Clark's appeal was pending in the Sixth Circuit, his counsel did not seek to supplement the briefs after March 16, 2009 and bring *Baker* to the attention of the Sixth Circuit panel that was considering Clark's appeal. There was an established rule of procedure in effect that arguably would have allowed Clark's counsel to cite *Baker,* 559 F.3d 443, as supplemental legal authority in Clark's pending appeal. Rule 28(j) of the Federal Rules of Appellate Procedure. If Clark's counsel had done so, there is a reasonable probability that the Sixth Circuit would have remanded Clark's case to the District Court pursuant to *Baker,* 559 F.3d 443, for further consideration whether Clark was properly classified and sentenced as a career offender under

U.S.S.G. § 4B1.1.  On June 15, 2009, Sixth Circuit affirmed Clark's judgment of conviction and sentence, and dismissed his appeal.  *Clark*, 328 Fed. Appx. 992.

Respondent United States concedes that if Clark is were resentenced today, it is possible that he might not be classified as a career offender under U.S.S.G. § 4B1.1 in light of *Begay* and *Baker*. Absent being classified as a career offender under U.S.S.G. § 4B1, Clark would have an offense level of 34 with a criminal history category V which would yield an initial Guidelines sentencing range of 235 - 293 months, plus the appropriate consecutive term of 60 months imprisonment on Count Six for violating 18 U.S.C. § 924(c).  Because that range of 235 - 293 months is lower than the previous range of 360 months to life imprisonment, respondent United States does not oppose Clark's request for resentencing under 28 U.S.C. § 2255, but only if the Court determines that resentencing is necessary and appropriate.

Respondent United States argues that if the Court grants Clark's motion to be resentenced in light of *Begay* and *Baker*, then the United States should be permitted to present additional evidence to show that one or both of Clark's prior Tennessee felony convictions for reckless endangerment are, in fact, qualifying crimes of violence and that Clark has been properly classified and sentenced as a career offender under U.S.S.G. § 4B1.1.

Respondent United States also reserves the right to argue at any resentencing hearing that, even if Clark's Tennessee felony convictions for reckless endangerment do not qualify as predicate "crimes of violence" and can no longer support his being classified and sentenced as a career offender under U.S.S.G. § 4B1.1, then the Court may still consider those convictions under 18 U.S.C. § 3553(a) for the purpose of imposing an appropriate sentence.  The United States asserts that if Clark cannot be classified as a career offender under U.S.S.G. § 4B1.1, then his current sentence

of 420 months imprisonment remains an appropriate sentence.

Based on *Baker,* 559 F.3d 443, this Court concludes that it is necessary and appropriate to hold a limited evidentiary hearing to determine whether Clark is entitled to relief under 28 U.S.C. § 2255 and should be resentenced. Consistent with *Baker,* 559 F.3d at 455, the hearing shall be strictly limited to two issues: (1) whether Clark's prior Tennessee felony convictions for reckless endangerment by dangerous weapon and reckless endangerment by motor vehicle qualify as "crimes of violence" under U.S.S.G. §§ 4B1.1 and 4B1.2; and (2) whether Clark is properly classified as a career offender under U.S.S.G. § 4B1.1.

During the hearing, this Court may receive and consider any additional factual evidence concerning Clark's Tennessee felony conviction for reckless endangerment, provided that the new evidence is limited to the charging documents, written plea agreements, transcripts of plea colloquy, and any explicit factual findings by the Tennessee trial judge to which defendant Clark assented. *Baker,* 559 F.3d at 455. At the conclusion of the hearing, the Court will decide whether it is necessary to grant any post-conviction relief to Clark under 28 U.S.C. § 2255 and resentence him.

## V.   Conclusion

With one exception, all of the claims presented by federal prisoner Thomas H. Clark in his motion for post-conviction relief pursuant to 28 U.S.C. § 2255 are **DENIED and DISMISSED WITH PREJUDICE**.

With regard to the Sixth Amendment claim that counsel was ineffective for not challenging on direct appeal Clark's classification as a career offender under U.S.S.G. § 4B1.1, in light of *Begay*, 553 U.S. 137, and  *Baker,* 559 F.3d 443, the Court will conduct a limited evidentiary hearing as discussed *supra*.

28

The Court reserves entry of a final judgment until all claims and issues have been decided.

SO ORDERED.

ENTERED:  September 11, 2012.

_____/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE
